That takes us to our final case on calendar, United States v. Lyon. Counsel for appellant, please approach and proceed when ready. Good morning, may it please the court. Robert Hamilton on behalf of Michael Lyon and I would like to reserve four minutes for rebuttal. This case involves a conviction for one of the most serious federal crimes, sexual exploitation of a minor, which carries a 15-year mandatory minimum. Mr. Lyon was convicted of this crime for an 18-second video he captured during a two- to three-hour sexual encounter that he had with the minor. The focus of the appeal is this narrow, limiting, specific intent element, which requires to be convicted that a person induce a minor to engage in sex for the purpose of making the video. If this case is affirmed, this court would be expanding the permissible circumstances of conviction under 2251, and also expanding the use of 404B evidence, specifically subsequent acts. And so I'd like to start with talking about the MJOA on the for the purpose element, then I'll discuss the 404B, and then if there's time, jurisdiction. The issues sort of bleed over between the 404B and the MJOA, and I'm glad to move around as the court would like. There's no dispute between the parties on the jury instruction. That is that the purpose had to be a dominant, significant, or motivating purpose. The case law, there's not a ton of case law on MJOAs on this element, but there's a number of cases where these threads develop. And the threads deal with what's sufficient, because the courts agree that just taking the picture or video by itself isn't sufficient to meet that element under 2251. And the courts talk about, obviously one of the main ways would be direct evidence, and that's Leawood's, and there's a statement. And that admission, those statements may come before the act, or it could be defendant's admissions after the act. More relevant to this case, because our case doesn't have such direct evidence, would be circumstantial evidence. And the cases really focus on things that happen during the encounter, and that is there is posing and directing, the minor, the equipment set up, the number of images and the lengths of videos. All the existing cases have something more than just subsequent conduct. The government in this case, one of their main arguments was that in their closing, and arguments to the court, was that the oral sex happened right after they got inside the hotel, and he immediately took his phone out and had the wherewithal to capture this moment. And I would just note that when you look at the minor victim's testimony, she describes on ER 132, there is not much testimony about how things occurred, and it sort of goes fast. And she just describes getting in, and then they get into this encounter with oral sex at the door. She doesn't say he immediately takes his phone out. She just says at some point she briefly sees him holding what she thinks is his phone, and he might be putting on music. So there is no dispute that there was a video recording of the incident, correct? Correct. Can I slow you down for a minute, and let's just talk in hypothetical terms for a moment? Sure. Do you dispute that if a defendant had in his mind at the outset, I'm going to have a sexual encounter with this minor, and I want a video of it for my own personal use for after the fact, so I have a memory of this incident. Do you dispute that if that was proven, that that would be sufficient to satisfy the elements of this offense? I think that satisfies the dominant or significant purpose, if that's what that person was intending, and that can be shown through circumstantial evidence or direct evidence, I would agree. Okay, so then the question then becomes, if you agree with that basic premise, then is the circumstantial evidence here enough to show that he had something in his mind about, not only do I want to have a sexual encounter with this person, but I want to have a recording of it? That's correct, that I want the recording as a dominant significant purpose. I agree, that's the question, and whether there's circumstantial evidence, and so our position is... So I hear you, I mean, you referenced facts that make the case easy. I have sort of a photography studio set up in the hotel room. I'm posing you, or I'm like making you wear certain outfits, or you know, those are the easy cases. So what is the evidence here that you think shows he did not have the intent to specifically capture this situation and record it? Well, as just a quick initial matter, I would note it's the government's burden to prove the intent. I understand that, but I'm asking you to say, tell me on this record why it's not a reasonable inference that that was his purpose. Leading up to this event, the two of them were in an approximately five-month online relationship, and there was clear indications that they were telling personal details about each other's life, and as wrong as it may be, that the defendant had developed feelings for this individual. And this individual, ML, testified she had developed feelings for him and trust for him, too. When they go to meet, he flies out across the country, and they meet. There are no discussions. ML does not say there's any discussions about videotaping. They are just getting together. It's their first time getting together in person, and that they're going to have sex. And then even when he arrives and gets here and he goes and picks her up, there is no discussion of videotaping. And so they end up going to the hotel, and as I mentioned in the brief, they're there for two to three hours. She sees him briefly holding his phone, but otherwise, after that brief holding of the phone, there is no other videotaping. I think the testimony is they have sex two times in the room, and he puts out flower petals and puts on music. And then immediately afterwards, when he drives her home, he says something to the effect of her, will you be my girlfriend? And she doesn't give him an answer, and she says he speeds off. And so in terms of stuff leading up to the incident and during the incident, there are no indications. I should add, and I know the court received the exhibit, he doesn't have special photographic equipment. The video is very haphazard in taking. There's no special posing being done. There's no sound to it, so there's no direction being given to her. So there was just an absence of evidence that is present in these other cases. And what the government needs to rely on to make this conviction is the subsequent acts, and that's what makes it different than the existing cases. And Palomino Coronado is my best case, but I also acknowledge our case has some more subsequent facts that Palomino Coronado didn't. But our case also does not have the facts that all the other cases have lined up on the other side. And it's in the dissent in Torres, but the judge noting in Torres there was a lot of posing, explicit posing done. And so the majority said, look, that's the main reason the jury can convict them. But they also note that evidence of sending it afterwards, in that case it's sent to Facebook, can be evidence of it. But in the dissent in that case, the judge says, look, if you only had the subsequent act of sending it to Facebook, that wouldn't be enough. And so there isn't a case that establishes that when there's a paucity of evidence that's contemporary or leading up to the incident, and it's only evidence subsequent acts, that that's sufficient. And it requires, what a person does after they, however they get this video or image, and then something goes wrong with the relationship, and the person ends up saying things about having the video or sending the video. Is there evidence that something went wrong with the relationship before he sent the video of this event to the brother and the boyfriend, I guess? There is. So the testimony I referenced when he was dropping her off after the incident about, will you be my girlfriend, she doesn't answer and he speeds off. And then her testimony, and I think it's at ER 161, she says after the incident, they were talking and he was getting mad because she wasn't doing what he wanted, which I think you can infer, which is breaking up with a boyfriend. And he tells her, I'm going to send the video to boyfriend. So they have this fight about the nature of the relationship, which is after the motel encounter. Before you run out of time, I know you wanted to talk about the 404B issue. My understanding of your argument on that point is that events that happen after the event at issue in the case are not probative of what his purpose was in this case, his intent was in this case. It seems like we have case law that flatly contradicts that and says that under 404, events that either occur before or after can be probative. So how do you get around those cases? I agree. They can be probative. I'm not asking for a new rule. I recognize all the cases in there. The cases do require that there be, and I'm taking the language from Rodriguez, which is in the government's 28J letter, the government must provide a logical connection supported by propensity-free chain of reasoning. That's whether something is subsequent or prior. And my argument is simply, and a number of the cases that deal with the subsequent acts talk about it, making that logical connection when you're dealing with intent and knowledge will be more difficult when you're dealing with a subsequent act. It's going to bear less on predisposition than a prior act would. I totally get that argument. And I'm not sure that the rule that we have in this circuit makes perfect sense. But it is the rule. So that's why I come back to, how do you get around the cases? Just based on applying the facts in our case. So, for example, in my 28J in Preston, they don't allow it in. They don't allow a subsequent act in. And the court goes off similarity. But no, I do it by distinguishing the cases. And, for example, you can compare Bebo Rodriguez and Henostra, which are in the brief. Those are subsequent acts, but they're tightly tied logically to what the offense of conviction is. And here, I think it's important that we're not talking about predisposition to have sex with a minor. That opens up the door to a lot of prior and subsequent acts with interest in minors. Here, the intent element they're trying to get at is engaging in sex for the purpose of taking the video. And so between the length of time, especially for the Lady L, the January 2020 Act, that the length of time and the qualitatively different behavior between asking for a video on text versus capturing a live sex act. And then with, again, Government Exhibit 34, the whisper chat from November 2020 was a statement of character. And so that really wasn't even an act at all. And so that should have been impermissible. So I don't disagree with the law of the circuit. I just say, as applied in this case, that they don't make that logical connection for it to break free of that propensity. Its value was in propensity and character evidence. Thank you. Thank you, counsel. We'll hear from the government. May I please have the court? Suzanne Miles for the United States. The after-the-fact evidence was not all of the evidence showing the purpose in this case. What the jury heard was that the defendant and this victim had created a trust relationship until he revealed to her that he was 30 years old instead of 15 or 17. And at that point, even before they had met, she had already started trying to get distance from him. And what we heard, what the jury heard, was that before he ever came to Oregon, he was already threatening her for her compliance. He threatened to hurt her family. He threatened to rape her sisters. And it was based on those threats that he coerced her compliance in meeting him when he showed up. So the victim that he took to that motel was not a compliant, readily participatory victim. And he knew that already. And what he did was he snuck her into that hotel room, and this was a hotel. This was not an Airbnb. There was not separation between him and everyone else. He did not take her through the lobby. He took her through a back entrance. He had her put a hood over her head, and he took her into this hotel. And even before this, we had evidence that he had gotten pictures of her. When she still believed that he was a teenager, he induced her to send him nude pictures of her. So he was already collecting images of her before they got to that hotel. And then when they got to the hotel, he did direct her. He put her down on her knees. He put his penis in her mouth, and he had her perform oral sex. And at the point that he knew that she was complying with that order, he started taking a video. And the jury heard that he kept that video. He sent it to the boyfriend a week later. They also heard evidence that two years later, in chats with the victim that he was still pursuing, he mentioned still having that video. So the jury heard that he preserved it. The jury also heard that he took another trophy from her that night. They heard that he took her underwear and wouldn't give them back to her, and told her that he was going to keep them. So the jury heard that Mr. Lyon had a desire to retain evidence and memories of this incident. We also heard, and the jury also heard, that he had a reason to want to collect evidence that he could use against her in order to continue her compliance. And we know that in part because he, in fact, used the video against her. And so whether the jury decided from this evidence that his motivating purpose was to have leverage over her, or was to have a trophy that he could take home for his own sexual gratification later, it heard plenty of evidence to hear that a motivating purpose, a dominant purpose in him engaging her in this sex, was in order to create that video. And the jury made that finding, despite the fact that the defense made all of the arguments here, that they made to the jury all of the arguments they made here. They said that this was a romantic exercise. They said all of these things, and frankly, the jury just didn't buy it. It made the reasonable inferences that it had every right to make based on the evidence that was presented to it. Counsel, did the record show that the victim was in a relationship with the boyfriend to whom he sent the video before the encounter and that the defendant knew that? Yes, it does. And where does it show that? It is in her testimony, which her testimony... I don't know if I have that ER site right on me, but she was the first witness that testified, so it would be in the second volume of the ER, and I think it would be in the late 100s. I can get you an exact site if that would be helpful. Unless the court has any other questions on that issue, I would turn very quickly to the 404B issue, and I think that this court's case law makes it clear that subsequent acts are just as admissible for 404B purposes as those prior. And here, the non-propensity chain that the court let this information in for was exactly what it was. It was exactly what the defendant put at issue, whether his intent in engaging this child in a sex act was to produce a video. And his interest in having personally curated sex videos from another victim, Lady L, that was made to order to him, and evidence that he would take video of himself engaged in a sexual activity, even if he had to do that surreptitiously, both went directly towards the question of intent, which was the only issue here. And as this court said in Curtin, when the defendant chooses to draw the battle line around his intent, then the government can use the evidence that it has available to it to be able to get into the mind of the defendant, and that oftentimes is circumstantial evidence about his other acts. Unless the court has any other questions, I'm happy to submit on the briefs. Thank you, Counsel. Rebuttal. Thank you. Just briefly, the evidence of him sneaking into the motel with her goes to the fact that he was committing other crimes, and there were other serious state crimes, and even federal crimes, traveling interstate to have sex with a minor. And so he had reasons that has no bearing on whether he was interested in having sex for the purpose of filming. Similarly, the trophy comment, that doesn't distinguish whether something is incidental or planned out, and it would depend on other evidence. And I'm sorry, the last question was the question about knowing about the boyfriend. I was looking for, real quick, I think in her testimony she does not state that he knew about the boyfriend beforehand, but I'm not positive if her brother, who I think is identified in the ERs as MW1, that there might be testimony in that section. But I don't have it on hand. Unless the court has further questions. It appears not. Thank you, Counsel. Thank you to both Counsel. The case just argued is submitted for decision by the court. That completes our calendar for the week. We are adjourned.
judges: RAWLINSON, FORREST, SUNG